BDB:JJT:nl

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. |
| | ) | |
| v. | ) | |
| | ) | (                    , J.) |
| THOMAS P. KEIGHTLY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## I N F O R M A T I O N

## COUNT 1

## CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS
## (18 U.S.C. § 1956(h))

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times material to this Information:

1.     Defendant Thomas P. Keightly ("Keightly") of Lebanon, PA, resided at 136 Ashford Drive, Lebanon, Pennsylvania, and owned and operated an illegal clandestine drug manufacturing facility located at his residence and at 531A Cumberland Street, Lebanon, Pennsylvania. Keightly's operation used the internet to distribute non-controlled prescription drugs to customers in the United States.

2.     The FDA was the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act (FDCA), Title 21, United States Code, Section 301, et seq.

3.     Under the FDCA, the term "drug" included any article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals, or an article (other than food) intended to affect the structure or any function of the body of man or other animals.  21 U.S.C. § 321(g)(1).

4.     The introduction or delivery for introduction into interstate commerce of any misbranded drug was prohibited.  21 U.S.C. § 331(a). "Misbranding" encompassed dispensing without a valid prescription a drug intended for use by man which, because of its toxicity or potential harmful effect, was not safe for use except under supervision of a licensed practitioner.  21 U.S.C. § 353(b)(1).

5.     A drug was also misbranded where its labeling was false or misleading in any particular, 21 U.S.C. § 352(a); where its labeling did not bear adequate directions for use, 21 U.S.C. § 352(f)(1); or where the drug was manufactured, prepared, propagated, compounded, or

processed in an establishment not registered with the Secretary of Health and Human Services, 21 U.S.C. § 352(o).

6.     "Peptides" were chemical compounds containing two or more amino acids linked by the carboxyl group of another.  Due to their toxicity or potential for harmful effect, peptides could not be dispensed for human use without a prescription from a licensed practitioner.

7.     There was an illegitimate market for peptides among body builders and others who engaged in weight training, since it was believed that the use of these substances enhanced muscle development.

8.     Clenbuteral is a prescription drug which is not FDA-approved for any human use, but is approved for veterinary use. Clenbuteral is used illegally by bodybuilders for its alleged fat burning properties.

9.     Clomiphene Citrate is the generic name of a prescription drug called Clomid, which is approved to treat infertility in women.  It is used by bodybuilders and others to counter the side effects of illegal steroid use, specifically to reduce incidence of gynecomastia.

10.     Tamoxifen Citrate is the generic name of a prescription drug called Nolvadex, which is approved for use in the United States to treat early stage breast cancer in women.  It is used by body builders and other athletes to counter the effects of steroid abuse, specifically a condition called gynecomastia, where a male's breast tissue becomes enlarged.

## THE CONSPIRACY

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

11.     From in or about September 2011, through in or about May 2013, in the Middle District of Pennsylvania and elsewhere, the defendant,

## THOMAS P. KEIGHTLY,

did knowingly combine, conspire, and agree with other persons known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:  to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of the specified

-4-

unlawful activity, that is, wire fraud, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## MANNER AND MEANS

12.    Keightly owned and operated a business under the company name Total Trading, LLC.  Keightly used Total Trading, LLC, to market and distribute without a prescription several prescription drugs, including non-FDA approved versions of Tamoxifen and Cabergoline, as well as Clenbuteral and peptides.

13.    In particular, Keightly advertised his business on the website www.professionalmuscle.com under the sponsor name "Man Power" and distributed his products through his own website www.mpresearchsupply.com.

14.    Under the company name Total Trading, LLC, Keightly knowingly sold these drugs to persons who used them to counter the side effects of steroid abuse.

15.     As a ruse, Keightly included a bogus legal disclaimer on the website www.mpresearchsupply.com and on the labeling on drug packaging that the drugs were strictly for "research purposes only."

16.     On his website, www.mpresearchsupply.com, Keightly offered for sale approximately 36 different products under the heading "research chemicals."

17.     In addition, the "About Us" section of Keightly's website, www.mpresearchsupply.com, falsely stated:  "We provide high quality research chemicals and peptides with the highest purity to many research institutions, clinical labs, bio companies, and the individual researcher.  We deal with many college students aiding them in their research projects & studies.  We have currently become a sponsor on www.researchdevelopmentforums.com and www.peptideresearch forum.com."

18.     Contrary to these representations, Keightly did not sell research chemicals and peptides to research institutions, clinical labs, or researchers.

19.    Keightly employed the "research chemicals" ruse in an attempt to conceal from FDA the fact that he was distributing these drugs for human consumption.

20.    The website www.mpresearchsupply.com stated that Total Trading, LLC, would ship the drugs via U.S. Postal Service, and that questions about products should be directed to email address mpresearchsupply@gmail.com.

21.    Persons purchased drugs from Keightly's website using Visa, MasterCard, Discover Card, and bank wire transfers to pay Keightly for the drugs.

22.    In order to process credit card payments received for the drugs, Keightly had to use a credit card payment processor.  Between in or about November 2011 and in or about March 2013, Total Trading, LLC, utilized at least three different payment processors, including Chase Paymentech and Heartland Payment Systems.

23.    In order to use its credit card payment processing services, Chase Paymentech required Keightly to submit a merchant application. On this on-line application, Keightly falsely represented to Chase

Paymentech that Total Trading, LLC, sold "research materials for Laboratory use (amino acids").

24.    In order to use its credit card payment processing services, Heartland Payment Systems required Keightly to sign a merchant application.  On this on-line application, Keightly falsely represented to Heartland Payment Systems that Total Trading, LLC, sold "research chemicals and peptides for laboratories."

25.    In addition, in order to utilize the services of Chase Paymentech and Heartland Payment Systems to process the payments for drugs Keightly sold on his website, Keightly had to obtain the services of a "payment gateway" company such as Authorize.Net.

26.    On or about July 10, 2012, Keightly used Authorize.Net's website to contract for Authorize.Net payment gateway services.

27.    The "Terms of Use" policies set forth on Authorize.Net's website stated:  "You agree that You will not at any time conduct Your business in any manner that directly or indirectly offers, sells, leases, licenses or displays, delivers, advertises, recommends, or promotes any product(s), service(s), data, information, image(s), text and/or any

content which:  is unlawful or violates any applicable local, state, federal, national or international law, statute, ordinance, or regulation . . . ," and "is associated with the sale of (a) any controlled drug that requires a prescription from a licensed practitioner . . ."

28.   By registering on-line for Authorize.Net's services, Keightly agreed to these "Terms of Use," even though Keightly knew at the time he agreed to these terms that his business offered, sold, and distributed drugs in violation of federal laws.

29.   Keightly engaged in the illegal on-line sale of prescription drugs, including peptides, Clenbuteral, Clomiphene Citrate, and Tamoxifen Citrate, and Keightly made false and fraudulent representations, pretenses, and promises to Authoriz.Net, Chase Paymentech, and Heartland Payment Systems as part of his scheme to obtain credit card payments from persons purchasing drugs from Keightly's website.

30.   Keightly transmitted or caused to be transmitted false and fraudulent pretenses, representations, and promises to Authorize.Net, Chase Paymentech, and Heartland Payment Systems about the nature of his business in that Keightly falsely represented he was selling

research chemicals and not prescription drugs, when, in fact, Keightly

knew he was distributing drugs in violation of federal laws and without

valid prescriptions.

31.   P.L. and D.P. owned and operated an illegal manufacturer

and on-line distributor of peptides and other FDA-regulated drugs.

32.   Keightly and P.L. and D.P. agreed that P.L. and D.P. would

sell and ship to Keightly the raw ingredients and drugs Keightly would

then use to manufacture and repackage drugs in Keightly's clandestine

facility.  Keightly used the proceeds from the wire fraud to purchase

additional drugs and raw materials from P.L. and D.P.

33.   Between in or about November 2011 and in or about May

2013, Keightly conspired with P.L. and D.P. to conduct financial

transactions knowing the property involved in these transactions were

proceeds of an unlawful activity, and intended to promote the carrying

on of the unlawful activity in that Keightly used the proceeds of the

wire fraud to purchase additional drugs from P.L. and D.P. which

Keightly, in turn, would market and distribute on his website and

obtain addition proceed through the payment processors and

Authorize.Net.

-10-

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 2

## (21 U.S.C. §§ 331(a) and 333(a)(2))

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

34.   The allegations contained in Paragraphs 1 through 33 of Count 1 of this Information are hereby repeated, re-alleged, and incorporated by reference as though fully set forth herein.

35.   On or about November 23, 2012, in the Middle District of Pennsylvania and elsewhere, defendant

## THOMAS P. KEIGHTLY,

with the intent to defraud and mislead, did introduce and deliver for introduction and cause the introduction and delivery for introduction into interstate commerce, Clenbuterol, Clomiphene Citrate, and Tamoxifen Citrate, all of which were misbranded in one or more of the following ways:  (1) its labeling was false and misleading in that it falsely purported the drugs to be "for research use only"; (2) its labeling lacked adequate directions for use; and (3) they were prescription drugs dispensed without a valid prescription from a licensed medical practitioner.

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

BRUCE D. BRANDLER
UNITED STATES ATTORNEY

_____11/4/16_____
DATE

By: _____
JOSEPH J. TERZ
ASSISTANT U.S. ATTORNEY

-12-